April 19, 1909.

————o————

## No. 4656.

## Court of Appeal, Parish of Orleans.

## FINLAY DICKS & COMPANY, LTD., VS. JEAN B. CAIRE ET ALS.

Where the proof is that persons forming themselves into a corporation under Act 36 of 1888, (Limited Liability Act), having deposited for registry with the Clerk of Court both the chartetr and the list of subscribers, but that the Clerk not deeming it incumbent upon him to record the list of subscribers only recorded the charter; that the charter and stock list were both published during thirty days in a newspaper published at the domicile of the corporation; that most of the stock was subscribed to and paid for, the stockholders doing so with the conviction that they were subscribing and paying for stock in a limited liability corporation, that the charter had been filed with the Secretary of State, and that the word "Limited"

was conspicuously used on the stationery of the corporation, it will be deemed a sufficient and substantial compliance with the Limited Liability Act (No. 36 of 1888).

Appeal from 24th Judicial District Court, Parish of St. James.

H. Kenner, for Plaintiff and Appellant.

Pugh & Himel, for Defendant and Appellee.

ESTOPINAL, J. Plaintiff's petition recites than Jean B. Caire, Theodule Schexnayder, Louis Hymel, Octive M. Poirrier, Harry G. Deas, F. Alford Poche and Louis T. Roussel, are indebted unto it in the sum of one hundred and eighty-four dollars and forty-six cents ($184.46)), averring that the above named persons were doing business as an ordinary partnership in the Parish of St. James, under the name and style of the St. James Ice and Bottling Works, and that while thus engaged in said partnership business, under said name, plaintiff sold and delivered to them certain goods and merchandise, for which they have refused to pay, in the meantime dissolving said alleged partnership.

The answer of defendants in a general denial.

When this case was first here on appeal with a judgment favorable to defendants, we remanded it to the District Court with instructions that fuller proof be made of the corporate capacity of the St. James Ice and Bottling Works, the defense set up by the defendants being that the plaintiffs had dealt with a corporation. We did not deem the proof offered in the original trial below to be sufficient to establish the status of the St. James Ice and Bottling Works, and in the furtherance of justice, sent the case back.

In our former opinion we said:

"Its charter (St. James Ice & Bottling Company, Limited), is in notarial form, and it is dated April 29th, 1905.

"In its form as well as in its recitals, it conforms fully with the requirements of Act No. 36 of 1888, known as the Limited Liability Act, and the laws of the State governing corporations in general and as expressed in Section 685, Revised Statutes, and as stated the charter was duly recorded."

"If this were all that the law required in order to create

corporate existence under the act stated, then have the defendants fully sustained their contention that they have become a corporation. But these are not all.

"To create corporate existence under Act No. 36 of 1888, there must be a compliance or at least a substantial compliance with its provisions.

"One of the provisions of the act is that the parties endeavoring to form themselves into a corporation for the purpose of carrying on any business or enterprise contemplated by the act, shall comply with the provisions of the laws of the State governing corporations in general.

"One of the several provisions of these laws requires not only the charter, but "the original subscription made for the purpose of organizing them (the corporations), shall be recorded in the office of the Recorder of Mortgages at the place selected for the domicile of the corporation."

Rev. Stat. Sec. 686.

"Another provision of the general law is that the charter shall be published in a newspaper at the domicile of the corporation at least once a week during thirty days."

"A special provision of the Act of 1888, *supra,* is that the name of the corporation created thereunder, (the word "Limited" to be the last word of the name), shall be conspicuously displayed on the outside of the office or place of business of such corporation, and shall likewise be mentioned in legible characters in all notices, advertisements and other writings used in the transaction of the business of such corporation, etc., etc."

Conformable to the views expressed by us the cause was again heard, and testimony adduced in the District Court which makes it clear that the incorporation of the St. James Ice and Bottling Works was a sufficient and substantial compliance with the law.

Our learned brother of the lower court has favored us with written reasons at once so lucid and strong, that we adopt them in part as follows:

"The evidence on the first trial of this case showed that the charter had been recorded, and on the second trial it was shown that both the charter and the list of subscribers was deposited with the Clerk of this Court for registry, that the Clerk, however, only recorded the charter. The Clerk in his testimony

says that he did not record the list of stockholders, because he knew of no law which required him to do so, although the list was attached to and bound as part of the act of incorporation. It was further shown that the charter and stock list were both published in a newspaper, 'The Interim' in the Parish of St. James, for the space of thirty days. The list shows on its face that there were three hundred and sixty shares of twenty-five dollars each, subscribed and paid for. Several stockholders were placed on the stand and testified that they had subscribed and paid for their stock, and that they did so with the firm conviction that they were subscribing to and paying for stock in a limited liability corporation. There was also some evidence to show that this charter had been filed with the Secretary of State. As to the use of the word "Limited," it is shown that it was conspicuously used on the stationery of defendant.

"The only deficiency in the testimony, suggested by the extracts from the opinion of the Court of Appeal, is that the defendants have failed to show that the word "Limited" was conspicuously displayed on the outside of the office or place of business of the corporation.

"There is nothing in the record to show whether the corporation had any office, nor where its place of business was situated; whether it was on a much frequented public highway or in some retired place where access was so difficult that no one, except for urgent business reasons, would care to visit the same; whether there was any sign of any kind on the buildings or place where the business was carried on; but be this as it may, I hardly can conceive that the absence of this proof would justify the court in holding the defendants personally liable. A reasonable interpretation of the law strikes me as being far, in the absence of any other informality, from sanctioning such a drastic result.

"It is a well known fact that previous to the passage of the limited liability act, no corporation could engage in the mercantile business; that a large number of firms were conducted under the styls of "So and So and Company," and others leaving out the conjunction 'and,' would style themselves 'the So and So Company,' and that in order to prevent fraud and deception, and to prevent the cunning purchaser from taking advantage of the unwary seller, the law-maker exacted the con-

spicuous display of this word "Limited," that all who dealt with such firms would be fully informed that they were dealing with a corporation organized under the English "Limited Liability' plan. Applying, then, the reasons of the law to the facts and circumstances of this case, was any fraud or deception of any kind, in the remotest degree, practiced by the defendants in the conduct of their business? There is not even a suggestion of fraud or deceit, either in the pleadings or the evidence before the court, the defendants all being upright and solid citizens of the community in which they live. As a further proof of the fact that no fraud or deception was ever practised in this case, or that even any misunderstanding ever arose between the parties, it clearly appears by the exhibits in evidence that plaintiff dealt with defendants as a corporation "limited." It is well established in our jurisprudence that a creditor is not estopped from attacking the validity of the charter of a corporation when he has dealt with it as such, but the knowledge of these plaintiffs that they were dealing with a limited liability corporation is merely mentioned in order to show that the spirit, if not the entire letter of the law, was observed by the defendants in the conduct and management of their business.

"Plaintiffs in their brief lay some stress on the fact that the list of stockholders was not recorded. It is shown that it was annexed to and bound with the original act of incorporation, and that it was published, together with the act for full thirty days in the parish where the corporation had its domicile. Plaintiffs rely on La. Nat'l. Bank vs. Henderson, 116 L. 413, where the organ of the court adverts to the necessity of recording the list of stock subscriptions as one of the grounds among numerous others which in that particular case was sufficient to sustain a cause of action, but does not in so many words strike the organization of a corporation with nullity for the sole want of that formality. In the quoted case the pleedings charge deception, and inferentially fraud. There is nothing of the kind in the case at bar, and I do not believe, under the facts here disclosed, where the stock was paid, and a list annexed to the charter and published in the official organ of the parish, that any analogy can be drawn with the charges and allegations contained in the La. Nat. Bank case.

"In conclusion it is my opinion that defendants have com-

plied with the substantial requisites of the law and that the informalities complained of are inconsequential.''

The judgment appealed from is therefore affirmed.